IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| TAYFUN ESER BACANAK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:25-cv-569 (RDA/WEF) |
| | ) |
| PAM BONDI, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants' Motion for Summary Judgment (Dkt. 8).[1] This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). These matters have been fully briefed and are now ripe for disposition. Considering the Motions together with Plaintiff's Complaint (Dkt. 1), Defendants' Memorandum in Support (Dkt. 9), Plaintiff's Opposition (Dkt. 13) and Defendants' Reply (Dkt. 14), the Court GRANTS Defendants' Motion for the reasons that follow.

### I. BACKGROUND[2]

The Immigration and Nationality Act ("INA") permits a noncitizen seeking admission to the United States to apply for asylum. 8 U.S.C. § 1158(a)(1). To qualify, applicants must meet

---

[1] Defendants here are (i) Pam Bondi, in her official capacity as Attorney General of the United States; (ii) Kristi Noem, in her official capacity as Secretary of the Department of Homeland Security; (iii) Kika Scott, in her official capacity as Director of United States Citizenship Services ("USCIS"); and (iv) Aster Zeleke, in her official capacity as Director of USCIS Neward.

[2] Defendants provided a background on the statutory and regulatory provisions governing the asylum process as well as some procedural information relating to this case. This information is appropriately set forth separately from Defendants statement of undisputed facts. To the extent

the definition of "refugee" by demonstrating either past persecution or a well-founded fear of future persecution on account of protected grounds listed in the statute. *See* 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(B)(i); *see also* Dkt. 9-1, Exh. 1, Declaration of Ashley Caudill-Mirillo ¶ 6 ("Mirillo Decl."). Applicants must also establish that they warrant a favorable exercise of discretion, as Congress has expressly afforded the Secretary of Homeland Security (the "Secretary") or the Attorney General discretion by providing that: "The [Secretary] or Attorney General *may* grant asylum . . . ." 8 U.S.C. § 1158(b)(1)(A) (emphasis added).

A noncitizen seeking asylum must generally apply within one year of being admitted to or paroled within the United States. 8 U.S.C. § 1158(a)(2)(B); *see also* Dkt. 9-2, Exh. 2, Declaration of Antonio Donis ¶ 20 ("Donis Decl."). An application may be filed affirmatively with USCIS or as a defensive measure during removal proceedings in immigration court. 8 C.F.R. § 208.2 (regulations concerning affirmative asylum applications); *id.* § 1208.2 (defensive applications). USCIS' Refugee, Asylum, and International Operations Directorate (hereinafter, the "Asylum Division") processes affirmative asylum applications. 8 C.F.R. § 208.2(a). Generally, the INA directs the Asylum Division to conduct the initial interview or hearing within forty-five (45) days after a noncitizen files the application and to adjudicate the application within one hundred eighty (180) days of the filing, absent extraordinary circumstances. 8 U.S.C. § 1158(d)(5)(A)(ii), (iii). Asylum applicants may obtain employment and apply for advance parole to travel outside of the

---

that Defendants delve into the specific policies employed by Defendants or the number of asylum applications received, those facts would have been more appropriately set forth in Defendants' statement of undisputed facts in support of summary judgment in compliance with Federal Rule of Civil Procedure and Local Rule 56. Plaintiff, however, did not object to the organization of Defendants' brief and the information set forth is appropriately supported by admissible evidence (in the form of declarations). Plaintiff does not object to this section and does not dispute the factual accuracy of the information contained therein. Accordingly, the Court considers the information set forth in Defendants "background" sections as it provides necessary context as well as necessary factual information for disposing of the motions for summary judgment.

United States while their applications are pending. 8 U.S.C. §§ 1182, 1158(d)(2), 1324a; 8 C.F.R. §§ 208.7(a)(1), 212.5(f), 274a.12.

Asylum officers conduct the initial interview on affirmative asylum applications. 8 C.F.R. § 208.1(b). If an applicant is statutorily eligible for asylum and warrants a favorable exercise of discretion, the asylum officer grants asylum to the applicant. 8 C.F.R. § 208.14(b). If the asylum officer determines either that the applicant is not statutorily eligible or does not warrant a favorable exercise of discretion, the officer will not grant the asylum application. If the applicant lacks legal status in the United States and the application is denied, the asylum officer refers the applicant to immigration court. *Id.* § 208.14(c)(1). A referral to immigration court is not a final decision in the case and is not considered a denial of the asylum application. *Id.* § 208.4(a)(3). The immigration court will then have exclusive jurisdiction to make a final decision on the asylum application. *Id.* § 208.2(b). If an asylum application is denied by an immigration judge ("IJ"), then the applicant may still seek withholding of removal or deferral of removal pursuant to the Convention Against Torture. *See* 8 U.S.C. § 1231(b)(3); 8 C.F.R. §§ 1208.16, 1208.17.

In addition to adjudicating asylum applications, the Asylum Division is also responsible for other mandatory workloads. This includes conducting credible fear and reasonable fear screenings pursuant to 8 U.S.C. § 1225(b)(2)(B), 8 C.F.R. § 208.30, and 8 C.F.R. § 208.31. In accordance with a Department of Homeland Security ("DHS") measure established under the Government Performance and Results Act, USCIS endeavors to complete credible fear screenings in an average of fourteen (14) days from receipt of referral.

Additionally, the Asylum Division conducts screening determinations regarding whether certain noncitizens are subject to the rebuttable presumption of ineligibility for asylum created by the Circumvention of Lawful Pathway Rule, 88 Fed. Reg. 31, 314 (May 16, 2023) and whether

noncitizens subject to this presumption are able to establish limited exceptions or rebut the presumption by demonstrating exceptionally compelling circumstances described in 8 C.F.R. §§ 208.33(a), 1208.33(a). Dkt. 9-1 ¶ 2. The Asylum Division also conducts threshold screening assessments at U.S.-Canada land border ports of entry to determine whether certain individuals are ineligible to apply for asylum pursuant to 8 U.S.C. § 1158(a)(2)(A). *Id.* The Asylum Division also adjudicates applications for relief under section 203 of the Nicaraguan Adjustment and Central American Relief Act and conducts asylum merits interviews and adjudicates applications for asylum pursuant to 87 Fed. Reg. 18,078 (May 31, 2022) ("Asylum Processing Rule"). *Id.*

In processing applications, the Asylum Division prioritizes claims that, unlike affirmative asylum adjudications, have a mandatory deadline under the regulations and affect detained noncitizens. Further, Congress has directed that the Asylum Division prioritize asylum applications filed by certain Afghan parolees under Operation Allies Welcome ("OAW"), as described in section 2502(a) of Public Law 117-43, The Extending Government Funding and Delivering Emergency Assistance Act (Sept. 30, 2021). A settlement agreement entered into by the Government in *Ahmed v. DHS*, 4:23-cv-01892-JST (N.D. Cal.), also created requirements that the Asylum Division must meet. Namely, it established benchmarks for the Asylum Division to become current with respect to OAW adjudications. Dkt. 9-2, Exh. 2 ¶ 11. Specifically, the settlement agreement requires USCIS complete 90% of all OAW asylum applications filed on or after February 1, 2024, within the 150 days required by the Extending Government Funding Act in 2021. *Id.* ¶ 10. The Arlington Asylum Office, where Plaintiff's application is pending, has the largest share of pending OAW applications. *Id.* ¶ 11.

To address a backlog of asylum cases, in 2018, USCIS announced began utilizing a "Last-In, First-Out" ("LIFO") scheduling method. Dkt. 9-1, Exh. 1 ¶¶ 21-25. Pursuant to this method,

4

applicants who were scheduled for an interview, but needed to be rescheduled at the applicant's or USCIS' request, are prioritized first; applications pending twenty-one days or less since filing are prioritized second; and all other pending applications, starting with newer filings and working back towards older filings, are prioritized third. *Id.* ¶ 25. Additionally, Asylum Office Directors may exercise discretion to adjudicate urgent cases ahead of others where exigent circumstances support expediting adjudication of a particular application. *Id.* ¶ 33.

Workload priorities related to border enforcement, statutory requirements, and litigation obligations also continue to affect USCIS' ability to schedule all new affirmative asylum applications for an interview within 21 days of filing. *Id.* ¶ 28. Accordingly, USCIS now schedules affirmative asylum interviews along two tracks simultaneously. *Id.* ¶ 32. Track one includes those prioritized applicants explained in the LIFO scheduling method, and track two includes the affirmative asylum cases that are pending in the backlog, starting with the oldest cases and working forward. *Id.* USCIS is therefore assigning some of its limited asylum officer corps to complete affirmative asylum cases pending in the backlog, starting with the oldest cases and working forward toward newer filings, in addition to scheduling asylum interviews according to the LIFO method. *Id.* ¶ 31. Additionally, asylum officers from the Arlington Asylum Office travel to other offices to conduct interviews on an ad hoc basis. Dkt. 9-2, Exh. 2 ¶ 13. In 2024, USCIS adjudicated more than 126,000 affirmative asylum cases. *See id.* Exh. 1, Chart 2.

In general, it takes approximately four hours to adjudicate an affirmative asylum application, but more complicated cases can take eight hours. *See* Dkt. 9-2, Exh. 2 ¶ 18. At the end of FY 2025 Quarter 1, the affirmative backlog totaled 1,446,908 applications, driven in large part by the substantial increase in affirmative asylum applications in FY 2022 and FY 2023. *See* Dkt. 9-1, Exh. 1 ¶ 34. The affirmative backlog at the end of FY 2024 totaled 1,343,933

applications. *Id.* Despite the increase in affirmative asylum applications, the Asylum Division's backlog of cases increased just 1% from FY 2023 to FY 2024. *See id.* Exh. 1, Chart 1.

USCIS is also taking steps to resolve cancellation cases in order to reduce backlog. "Cancellation cases" are affirmative asylum cases filed by noncitizens that are late, meritless, and/or solely for the purpose of USCIS placing them in removal proceedings before EOIR, where a noncitizen may apply for cancellation of removal. *Id.* ¶ 54. To curb these cancellation cases, USCIS offers applicants that may qualify as a cancellation case to waive their asylum interview and be referred to EOIR. *Id.* In the past 5 fiscal years, approximately 20% of applicants who received the opportunity to waive their interview accepted the offer. *Id.* ¶ 57. The Asylum Division is also utilizing technology to streamline application processing. *Id.* ¶ 58.

Plaintiff filed this lawsuit on April 2, 2025. Dkt. 1. Plaintiff seeks an order from this Court compelling USCIS to adjudicate his Form I-589, Application for Asylum and for Withholding of Removal. *Id.* ¶ 33. Plaintiff premises his request for relief on the Administrative Procedure Act (the "APA") and the Mandamus Act. On June 6, 2025, Defendants filed their Motion for Summary Judgment (the "MSJ"). Dkt. 8. On July 7, 2025, Plaintiff filed his Opposition. Dkt. 13. On July 14, 2025, Defendants filed their Reply in Support of the MSJ. Dkt. 14.

## II.     UNDISPUTED FACTS

Consistent with Rule 56 and Local Rule 56, Defendants set forth their asserted undisputed facts. Dkt. 9 at 16-17. Plaintiff did not object or respond to any of these facts. Accordingly, the Court draws the below set of undisputed facts from the MSJ.

1. On March 24, 2021, Plaintiff filed his Form I-589, Application for Asylum and for Withholding of Removal.

2. On May 10, 2021, Plaintiff completed his biometrics appointment.

3. Plaintiff filed his Form I-765, Application for Employment Authorization, on November 29, 2021.

4. Plaintiff's Form I-765 was approved on March 8, 2022, with his "Employment Authorization Document" or "EAD" set to expire on March 2, 2024.

5. Plaintiff applied to renew his EAD on March 1, 2024.

6. On March 27, 2024, Plaintiff's application to renew his EAD was approved, and his current EAD is valid until March 6, 2029.

7. USCIS has no record of receiving a request for advanced parole from Plaintiff based on his application.

8. As of the filing of the Complaint, Plaintiff has not been scheduled for an asylum interview.

## III.    LEGAL STANDARD

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The party seeking summary judgment has the initial burden to show the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. "(A) party opposing summary judgment may not simply rest on the allegations of his complaint but must instead come forward with specific evidence showing the existence of a genuine issue of fact." *Muhammad v. Giant Food*, 108 F. App'x 757, 764 (4th Cir. 2004) (citing *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991)).

IV.     ANALYSIS

Defendants argue that they are entitled to judgment as of matter of law on Plaintiff's claims under the APA and Mandamus Act because USCIS has not "unreasonably delayed" the adjudication of Plaintiff's asylum application. Dkt. 9 at 18. On the other hand, Plaintiff argues that adjudication of the application *is* unreasonably delayed under the APA and the Mandamus Act, and thus seeks to compel Defendants to adjudicate Plaintiff's application. This argument fails, and Defendants are entitled to judgment as a matter of law.[3]

With respect to this claim, the parties agree that most courts have followed the D.C. Circuit's decision in *Telecommunications Research & Action Center (TRAC) v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984). The six *TRAC* factors include consideration of: (i) the time agencies take to make decisions must be governed by a rule of reason; (ii) the statutory scheme may supply content for this rule of reason; (iii) delays are less tolerable where human health and welfare are at stake; (iv) the effect of expediting delayed action on agency activities of a higher or competing priority; (v) the nature and extent of the interests prejudiced by delay; and (vi) any impropriety, but such impropriety is not necessary to find unreasonable delay. *TRAC*, 750 F.2d at 80. No single factor is dispositive, but the first and fourth factors often carry the greatest weight. *See In re Core Communications, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008). In addition, the agency's responsiveness, or lack thereof, "must be judged in . . . light of the resources that Congress has supplied to the agency for the exercise of its function." *Wright v. Califano*, 587 F.2d 345, 353 (7th Cir. 1978) (holding that plaintiff's delayed decision was reasonable because the Social Security

---

[3] As an initial matter, the standard for obtaining relief under the APA and Mandamus Act are functionally identical and will be considered together. *See Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63-64 (2004); *see also Gebremedhin v. Gentry*, 2025 WL 1139115, at *2 (E.D. Va. Apr. 17, 2025).

Administration's volume of applications increased, and the agency had finite resources to address the increased volume). Because Plaintiff cannot establish that Defendants' delay is unreasonable under *TRAC*, Defendants' motion will be granted.

With respect to the first and second *TRAC* factors, Defendants acknowledge that "there is a delay in adjudicating asylum applications" and assert that the delay was caused by an unprecedented volume of asylum applications. Dkt. 9 at 20. Both parties appear to agree that USCIS uses a combination of the LIFO and backlog reduction efforts to address asylum applications, but dispute whether such practice constitutes a rule of reason. Dkt. 9 at 20; Dkt. 13 at 8. A review of the Mirillo and Donis Declarations, as well as the information attached thereto, demonstrates that USCIS is under tremendous strain to adjudicate the pending asylum applications and address the backlog, while simultaneously receiving new applications and addressing other statutory obligations. Dkt. 9-1, Exh. 1 ¶ 34; Dkt. 9-2, Exh. 2 at 13. As the Mirillo Declaration sets forth, the LIFO system has been more effective than other systems because it simultaneously addresses the backlog, addresses new applications, and discourages frivolous filings. *See* Dkt. 9-1 ¶¶ 22, 26, 30 (indicating that a "First-In, First-Out" or "FIFO" system "unfortunately had negative consequences" because it "led to a substantial increase in non-meritorious asylum applications" and that "[r]eceipts immediately fell upon the return to LIFO scheduling"). Thus, the information provided by Defendants establishes that the combination LIFO/backlog reduction system provides a rule of reason informed by the statutory scheme. Accordingly, the first and second *TRAC* factors weigh in Defendants' favor.

This Court's conclusion that the LIFO/backlog reduction system provides a rule of reason is supported by the decisions of other courts, within and outside of this Circuit, who have reached the same conclusion. *See, e.g., Gebremedhin*, 2025 WL 1139115, at *3 ("USCIS employs a rule

9

of reason"); *Hasnat v. Rubio*, 2025 WL 675221, at *4 (D. Md. Mar. 3, 2025) (treating motion as one for summary judgment and finding LIFO is a rule of reason); *Zheng v. Mayorkas*, 2024 WL 130157, at *6 (N.D. Cal. Jan. 11, 2024) (finding LIFO a rule of reason and noting that "courts in this Circuit have consistently found that LIFO is a rule of reason"). Courts have even determined that the LIFO/backlog reduction system is a rule of reason at the motion-to-dismiss stage. *See, e.g., Zhang v. Wolf*, 2020 WL 5878255 (E.D.N.Y. Sept. 30, 2020) ("These precedents, and the record of which the court takes judicial notice, support a finding that the adjudication of asylum applications pursuant to LIFO is governed by a 'rule of reason.'"); *Teymouri v. USCIS*, 2022 WL 18717560, at *4 (C.D. Cal. Jan. 31, 2022) ("In considering the first and second factors, courts consistently find that the last-in-first-out scheduling system ('LIFO') is a rule of reason."); *Arabzada v. Donis*, 725 F. Supp. 3d 1, 14-15 (D.D.C. 2024) (listing cases in various circuits also ruling that LIFO constitutes a rule of reason). Plaintiff does not cite any authority to the contrary. Dkt. 13 at 5. Rather Plaintiff argues that there is no rule of reason where there has been no timeline, or no definite end date, for when Plaintiff's application will be addressed. But this argument is unsupported and fails to recognize the complexity of the task faced by Defendants. *See Hasnat*, 2025 WL 675221, at *4 (recognizing that courts must consider "the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency"). As courts recognize, LIFO "is an imperfect system that places some applicants ahead of others in line, but USCIS offers a valid reason for its use, and it provides 'an orderly chronological approach.'" *Id.* (quoting *Arabzada*, 725 F. Supp. 3d at 15).

Factors three and five are often considered together. Plaintiff asserts that the unreasonable delay has caused Plaintiff stress and has affected his mental health, as well as family ties and social life. Dkt. 13 at 6. Although the Court does not doubt the sincerity of Plaintiff's fears, they do not

appear to be based on any specific examples of concrete harms to himself or his family. *See id.* Even taking Plaintiff's anxieties at face value, courts have recognized that "uncertainty and the inability to move forward with the normal course of life are inherent risks of engaging in the immigration process." *Tikhonov v. Mayorkas*, 2024 WL 4692146, at *6 (S.D. Fla. Nov. 6, 2024); *Liuqing Zhu v. Cissna*, 2019 WL 3064458, at *4 (C.D. Cal. Apr. 22, 2019) (finding that "such a risk is inherent in the process of seeking asylum" and does not weigh in plaintiff's favor); *Lajin v. Radel*, 2019 WL 3388363, at *3-4 (S.D. Cal. July 26, 2019) (rejecting consideration of plaintiff's "anxiety, worry, [and] psychological depression" where plaintiff "is permitted to live in the United States without fear of being removed to his home country . . . and can apply for employment authorization").

Plaintiff also receives several benefits from his status with the EAD that support his health and welfare. *See* 8 U.S.C. §§ 1158(d)(2), 1324a (work authorization); 8 U.S.C. § 1182(d)(5) (advance parole). Courts recognize that these benefits confirm that the third and fifth *TRAC* factors weigh in favor of Defendants. *See Lajin*, 2019 WL 3388363, at *4 (finding that third and fifth factors weigh in favor of Defendants where "Plaintiff is able to live his life during the delay without the additional concern of removal or inability to work"); *Gebremedhin*, 2025 WL 1139115, at *4 ("Third, there is no increased risk to human health and welfare. Plaintiff is residing in the United States while her application is pending."). Moreover, Plaintiff's asserted difficulties are no different than those "likewise faced by all asylum applications in similar positions." *Su v. Mayorkas*, 698 F. Supp. 3d 1168, 1178 (N.D. Cal. 2023) (quoting *Yan v. Dir. of L.A. Asylum Office*, 2023 WL 4053410, at *5 (C.D. Cal. June 16, 2023)). Thus, "Plaintiff must understand that his present request simply asks the Court to value his stress over that of thousands of other asylum applicants who are currently experiencing the same stress." *Yilmaz v. Jaddou*, 697 F. Supp. 3d

951, 962 (C.D. Cal. Oct. 4, 2023). Accordingly, the third and fifth factors also weigh in favor of Defendants.

With respect to the fourth *TRAC* factor, the Court agrees with Defendants that expediting Plaintiff's application will prejudice Defendants and other applicants. As the Fourth Circuit has indicated, "courts should be loath to second guess" how USCIS balances "the need for adequate protections for asylum seekers against a backlog of cases." *Blanco de Belbruno v. Ashcroft*, 362 F.3d 272, 280 (4th Cir. 2004). Further, this Court agrees with U.S. District Judge Claude M. Hilton's analysis that "[i]nevitably there are only so many interview spots" and that, "[i]f one applicant is expedited, there is one less spot for the applicants who have been waiting longer." *Gebremedhin*, 2025 WL 1139115, at *4. Other courts have also recognized the prejudice that such reordering of priorities would have on other applicants. *See, e.g., Liu v. USCIS*, 2024 WL 4436232, at *3 (E.D.N.Y. Oct. 7, 2024) ("Ordering the agency to place plaintiff 'at the head of the queue' while 'mov[ing] all others back one space,' could thus delay the adjudication of longer-pending applications that present comparable interests."). Indeed, granting Plaintiff's relief here would cause further havoc in the asylum processing system, because every asylum applicant would be incentivized to file suit after 180 days had passed and USCIS could have to juggle competing court orders directing USCIS to prioritize different individual applications. Thus, Plaintiff's argument that granting *his* relief would not disrupt the queue and would rather provide a remedy for Plaintiff whose rights have been violated by the delay ignores the reality of the situation, because it is a slippery slope that would surely lead to other applications attempting to do the same thing and result in numerous applications being taken out of turn. Accordingly, this factor also favors Defendants.

Thus, five of the six *TRAC* factors favor Defendants. With respect to the final *TRAC* factor, it merely holds that a court need not find impropriety in order to find a delay unreasonable. Plaintiff concedes that there is "no evidence of bad-faith impropriety." Dkt. 13 at 7. Accordingly, this factor is neutral. Because the *TRAC* factors weigh in favor of Defendants, the Court finds that there is no unreasonable delay here and that Defendants are entitled to judgment as a matter of law.[4]

---

[4] Plaintiffs argue that the Court should defer summary judgment at this stage because it is premature. The Court disagrees. Plaintiff asserts that he has not had proper opportunity to conduct discovery in this case and that there is a need for discovery on the LIFO and backlog reduction system, the allocation of resources, and the backlog data and statistics. Dkt. 13 at 8. The Declaration of Attorney Erdogan Tunc (the "Tunc Declaration") reiterates the same basic categories of discovery sought. Dkt. 13-1 at 1-3. Plaintiff and the Tunc Declaration, however, fail to "specifically allege why the information sought would have been sufficient to create a genuine issue of material fact." *Strag v. Bd. of Trs.*, 55 F.3d 943, 954 (4th Cir. 1995). Moreover, the Fourth Circuit has held that "[a] [Rule 56(d)] affidavit that conclusorily states that discovery is required is insufficient; the affidavit must specify the reasons the party is unable to present the necessary facts and describe with particularity the evidence that the party seeks to obtain." *Radi v. Sebelius*, 434 F. App'x 177, 178 (4th Cir. 2011). Plaintiff does not connect any of the information sought to the specific undisputed facts asserted by Defendants as sufficient to award summary judgment in their favor, nor does Plaintiff explain how any of the information sought would create a triable issue of fact. *See Hodgin v. UTC Fire & Security Americas Corp., Inc.*, 885 F.3d 243, 250 (4th Cir. 2018) (dismissing a Rule 56(d) motion because plaintiffs' requests "do not . . . explain how that evidence would create a triable issue"). In short, Plaintiff's declaration fails to specifically connect the requested discovery to the motion for summary judgment and therefore fails pursuant to satisfy Rule 56(d). Accordingly, this Court finds that summary judgment is appropriate at this stage and that, for the reasons stated above, Defendants are entitled to judgment as a matter of law.

V.   CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the Motion for Summary Judgment (Dkt. 8) is GRANTED; and it is

FURTHER ORDERED that the Clerk of the Court is DIRECTED to enter Rule 58 judgment on behalf of Defendants and against Plaintiff; and it is

FURTHER ORDERED that the Clerk of the Court is DIRECTED to place this matter among the ended causes.

IT IS SO ORDERED.

Alexandria, Virginia
September 24, 2025

/s/
Rossie D. Alston, Jr.
United States District Judge